UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| PATRICIA MEDINA TALBERT, | : | |
| | : | Civil Action No. 09-2782 (SRC) |
| Plaintiff, | : | |
| | : | |
| v. | : | OPINION |
| | : | |
| THE JUDICIARY OF THE STATE | : | |
| OF NEW JERSEY, DEBORAH T. | : | |
| PORITZ, JAMES R. ZAZZALI, | : | |
| STUART RABNER, PATRICIA | : | |
| K. COSTELLO AND JOSEPH A. | : | |
| FALCONE, | : | |
| | : | |
| | : | |
| Defendants. | : | |
| | : | |

**CHESLER, U.S.D.J.**

This matter comes before the Court on the motion to dismiss filed by all Defendants [docket item #11]. Plaintiff has opposed this motion [docket item #19]. After consideration of the parties' briefing, the Court has determined that it will grant the motion to dismiss. In the following discussion, the Court gives its reasons for the decision.

**FACTUAL BACKGROUND**

Plaintiff's Complaint alleges that the New Jersey State Judiciary and various Justices and Judges of the New Jersey courts engaged in discriminatory and retaliatory conduct, which ultimately resulted in Plaintiff's failure to be re-appointed as a New Jersey Superior Court judge. The background for these claims, as set forth in the Complaint is as follows: On November 30, 2000, Plaintiff became the first and only Asian female jurist on the Superior Court of New Jersey. (Complaint ¶ 13). Unless given another seven-year term, or granted tenure, Plaintiff's appointment would, and did, end on November 29, 2007. (Id.) Upon being appointed, Plaintiff

was first assigned to the Criminal Part, Essex County. (Id. at 15) On February 9, 2004, Plaintiff was re-assigned to the Landlord/Tenant division, Special Civil Part. (Id. at 17) Plaintiff alleges that "only judges of color" were being assigned to the Landlord/Tenant division. (Complaint ¶ 19) After expressing this concern, along with a concern regarding sexual harassment[1], to then Assignment Judge Joseph A. Falcone, Plaintiff was ordered to remain in the Criminal Part.[2] (Id. at 20) Shortly thereafter, however, Plaintiff was reassigned to the Family Part. Plaintiff alleges that the rotation practices were discriminatory, as her white male counter-parts were not transferred to the Family Part until after receiving tenure. (Id. at 22) In 2004, Plaintiff informed then Assignment Judge Patricia Costello, that "there was a wide spread belief that the rotation practices in Essex County were discriminatory affecting only judges of color and women." (Complaint ¶ 23). Given the complexities of the Family Part, Plaintiff alleges that it is significantly more difficult to receive tenure when placed in the Family Part. (Id. at 26)

On February 25, 2005, the Presiding Judge of the Family Part informed Plaintiff of various complaints that could impact Plaintiff's career. (Id. at 29) Plaintiff was then ordered to attend a demeanor class based on the complaint of a pro se litigant. Plaintiff alleges that "no judge in Essex county has ever been directed to attend any demeanor class as a result of any complaint by a pro se litigant or from counsel." (Id. at 31). After attending the class, Plaintiff remained in the Family Part for another 3 years. While in the Family Part, Plaintiff received unfavorable reviews in the evaluations conducted by the attorneys practicing before her. (Id. at 39)

---

[1]Although not appearing to be the factual basis for her causes of action, Plaintiff alleges that she informed Judge Falcone that "a senior judge from another county . . . kissed the Plaintiff's hand, dropped to his knees, picked up the Plaintiff's foot and moved up her leg as he kissed it." (Complaint ¶ 18)

[2]The Assignment Judge is the highest-ranking judge in each county. (Complaint ¶ 21)

On May 2, 2005 the Director of the Administrative Office of the Courts of New Jersey, advised Plaintiff that the Administrative Office was investigating Plaintiff's claims of discrimination and required Plaintiff to submit to questions by an investigator. (Id. at 37) Subsequently, the Administrative Office "concluded the claim of discrimination, disparate treatment and retaliation was unfounded." (Id. at 37) On December 14, 2005, Plaintiff filed a Charge of Discrimination against the Judiciary with the New Jersey Division on Civil Rights. (Id.) Plaintiff further alleges that no one from the Judiciary assisted Plaintiff in seeking tenure, as, she contends, was the tradition with the other judges. (Id. at 41).

Under the New Jersey Court system, a Superior Court judge is appointed by the Governor for seven years. The appointment requires the approval of the State Senate. Upon the conclusion of seven years, the Governor has the option of reappointing the judge. If the Governor reappoints and the State Senate again confirms the reappointment, the Superior Court judge obtains tenure- effectively being appointed until the judge reaches the mandatory retirement age of seventy. On August 20, 2007, Governor Corzine's counsel informed Plaintiff that the Governor would not be re-nominating her. (Id. at 42) On October 10, 2007, Plaintiff sent a letter to Governor Corzine that she would not be seeking reappointment. (Id.)

Plaintiff's Complaint asserts six causes of action based on her status as a female and "her race and/or national origin": 1) disparate treatment in violation of 42 U.S.C. Section 1981; 2) retaliation in violation of 42 U.S.C. Section 1981; 3) disparate treatment in violation of 42 U.S.C. Section 1983; 4) retaliation in violation of 42 U.S.C. Section 1983; 5) disparate treatment under Title VII of the Civil Rights Act of 1964; and 6) retaliation under Title VII of the Civil Rights Act of 1964.

## II.  DISCUSSION

### A. Standard of Review

Defendant brings this motion pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the claims asserted in the Complaint for failure to state a claim upon which relief may be granted.  When evaluating the sufficiency of claims, the Court must apply the plausibility standard articulated by the Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009).  In Twombly and Iqbal, the Supreme Court stressed that a complaint will survive a motion under Rule 12(b)(6) only if it states "sufficient factual allegations, accepted as true, to 'state a claim for relief that is plausible on its face.'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556.)

The cases are also clear about what will not suffice: "threadbare recitals of the elements of a cause of action," an "unadorned, the-defendant-unlawfully-harmed-me accusation" and conclusory statements "devoid of factual enhancement."  Id. at 1949-50; Twombly, 550 U.S. at 555-57.  While the complaint need not demonstrate that a defendant is *probably* liable for the wrongdoing, allegations that give rise to the mere *possibility* of unlawful conduct will not do. Iqbal, 129 S.Ct. at 1949; Twombly, 550 U.S. at 557.  The issue before the Court "is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims."  Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (relying on Twombly to hold that to survive a motion to dismiss a Complaint must assert "enough facts to raise a reasonable expectation that discovery will reveal

evidence of the necessary element").

The Court must consider the Complaint in its entirety and review the allegations as a whole and in context. Iqbal, 129 S.Ct. at 1950. In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the allegations of the complaint, documents attached or specifically referenced in the complaint if the claims are based upon those documents and matters of public record. Winer Family Trust v. Queen, 503 F.3d 319, 327 (3d Cir. 2007).

**B. Analysis**

Plaintiff alleges that the retaliatory and discriminatory tactics of the Defendants resulted in her failure to be re-nominated. Plaintiff alleges that she was: 1) placed in the Family Division because of discrimination against her and in retaliation for her protected conduct; 2) discriminated against by being required "to attend a demeanor class as a result of [a] complaint by a pro se litigant"; and 3) retaliated against when the director of the EEO required Plaintiff to participate in the investigation of Plaintiff's claims of discrimination and retaliatory conduct.[3] These events allegedly resulted in unfavorable reviews from evaluating attorneys, which, in turn, ultimately resulted in Plaintiff's failure to be re-nominated. (Complaint ¶ 39)

**1.    There Is No Proximate Cause Between The Alleged Conduct And Plaintiff's Failure to Be Reappointed.**

Any claim based on the failure to be reappointed, must fail for lack of proximate causation. An essential element of each of Plaintiff's causes of action is proximate causation. See, e.g., Rodriguez v. Fajardo, 2007 WL 1959254, *5 (D.N.J. 2007) ("Proximate cause is an essential element of a claim seeking to establish liability under Section 1983."); Rogers v.

---

[3] Although not appearing to be the true basis of any causes of action, Plaintiff also asserts "no one from the Judiciary offered any assistance [concerning reappointment] during this time." (Complaint ¶ 41). Plaintiff provides no authority for the proposition that the failure to provide "assistance" is the basis for any cause of action.

Alternative Resources Corp., 440 F. Supp. 2d 366, 376 (D.N.J. 2006) (a retaliation claim under title VII must show "a causal link between the protected activity and the adverse employment action."). Furthermore, Plaintiff's Section 1981 claims are merged with the Section 1983 claims. Evans v. Port Authority of New York and New Jersey, 2007 WL 3071808, at *9 (D.N.J. 2007) ("because Congress did not intend to create an independent cause of action against state actors for violations of 42 U.S.C. Section 1981, [] Plaintiffs Section 1981claims are merged with their Section 1983 claims.")[4]

A discrimination action under Title VII must allege that: 1) Plaintiff is a member of a protected group; 2) Plaintiff was performing her job at the expected level; 3) despite such performance, Plaintiff suffered an adverse employment action, and 4) circumstances gave rise to an inference of unlawful discrimination. Pivirotto v. Innovative Systems, Inc,191 F.3d 344, 352-57 (3d. Cir. 1999). Similarly, a retaliation claim under Title VII must allege that "1) [s]he is engaged in activity protected by Title VII; 2) the employer took an adverse employment action against [her]; and 3) there was a causal connection between [her] participation in the protected activity and the adverse employment action." Moore v. City of Philadelphia, 461 F.3d 331, 341 (3d. Cir. 2006)[5]. A Court can dismiss claims based on lack of proximate causation at the motion

---

[4] Plaintiff concedes that "while Section 1981 creates rights, Section 1983 provides the remedy to enforce those right against state actors." Jett v. Dallas Independent School District, 491 U.S. 701, 723 (1989). In short, Plaintiff agrees that "although a section 1981 claim may not be cognizable against state actors, the rights conveyed are actionable under section 1983." (Opp. at 45.)  As discussed *supra*, Plaintiff has not asserted any actionable rights under Section 1983, and, therefore has no "remedy to enforce [Section 1981] rights against state actors." Jett, 491 U.S. at 723.  The Section 1983 claims brought against the Judiciary must also fail under Eleventh Amendment immunity, which immunizes an unconsenting state from suits brought in federal court by citizens of any state.  See Onyiuke v. New Jersey Supreme Court, 435 F. Supp. 2d 394 (D. N.J. 2006) ("the New Jersey Supreme Court is, therefore, entitled to Eleventh Amendment immunity.")

[5] The Court agrees that, under Title VII, the standard for a retaliation claim differs from the standard for a discrimination claim.  (See Opp. at 23-31.)  This conclusion is of no moment,

to dismiss stage. See City of Philadelphia v. Beretta U.S.A. Corp., 277 F.3d 415, 423 (3d Cir. 2002); Port of Authority of New York and New Jersey v. Arcadian Corp., 991 F. Supp 390, 406 (D.N.J. 1997).

As discussed *supra*, the decision to reappoint lies solely with the Governor. See N.J. Const. Art VI, Sec. VI, par. 1.  The independent decision of the Governor (who was not alleged to have engaged in discriminatory conduct or named in the Complaint) was obviously not directly caused by the actions of the Defendants.  Rather, Plaintiff essentially asserts that her placement in the Family Division of the Superior Court somehow resulted in unfavorable reviews by attorneys appearing before her[6], and that these unfavorable reviews; coupled with the failure of others in the Judiciary to support her in seeking reappointment, and the other conduct of which she complains (i.e., being labeled with a "demeanor problem") led the Governor to decide that Plaintiff should not be reappointed, which resulted in Plaintiff's decision not to seek reappointment.  The asserted causal connection is simply far too attenuated to support a claim that the reappointment decision was proximately caused by this conduct.  It pre-supposes, for example, that judges who do serve in the Family Part are doomed to fail in the reappointment process.  It also pre-supposes that all judges in the Family Part are destined to have unfavorable evaluations given by attorneys and pro se litigants appearing before them, merely because the judge served in that part.  Plaintiff's Complaint also simply assumes that judges seeking tenure are somehow entitled to the "assistance" of the Judiciary during the process and that the failure to have this "assistance" likewise dooms a candidate for reappointment.  In short, it is clear that the

---

however, as Plaintiff has failed to plead the necessary elements of proximate causation and adverse employment action.

[6] New Jersey Superior Court judges are subject to evaluations based upon questionnaires sent to appearing counsel, the results of which are tabulated by the Administrative Office of the Courts. (Complaint ¶ 19)

causal chain that Plaintiff seeks to describe has so many variables that proximate causation cannot be attributed to this conduct.  Holmes v. Securities Investor Prot. Corp., 503 U.S. 258, 268 (U.S. 1992) (proximate causation requires "some direct relation between the injury asserted and the injurious conduct.")

### 2. Plaintiff's Assignment Was Not An Adverse Employment Action

Taken individually, the various acts of Defendants do not constitute adverse employment actions.[7]  Adverse employment actions are those actions which "affect adversely the terms, conditions, or privileges of the plaintiff's employment or limit, segregate or classify the plaintiff in a way which would tend to deprive her of employment opportunities or otherwise affect her status as an employee." Marrero v. Camden County Board of Social Services, 164 F. Supp. 2d 455, 473 (D.N.J. 2001).  In other words, "[n]ot everything that makes an employee unhappy qualifies . . . [and] a tangible employment action 'in most cases inflicts direct economic harm.'" Cortes v. UMDNJ, 391 F. Supp. 2d 298, 312 (D.N.J. 2008) quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998).  While there is no set list of what constitutes an adverse employment action, there must be a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Durham Life Ins. Co. v. Evans, 166 F.3d 139, 152-53 (3d Cir. 1999).

---

[7] An essential element of Plaintiff's claims is the existence of an adverse employment action. Pivirotto v. Innovative Systems, Inc,191 F.3d 344, 352-57 (3d. Cir. 1999) (Plaintiff must allege an adverse employment action for discrimination actions under Title VII); Moore v. City of Philadelphia, 461 F.3d 331, 341 (3d. Cir. 2006) (an adverse employment action is essential to a claim for retaliation under Title VII); Andrews v. City of Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990) (a disparate treatment claim under 42 U.S.C. Section 1983 must allege an adverse employment action); Stegemiller v. Wilson, 1994 WL 24904, *2 (5th Cir. 1994) (upholding Section 1983 dismissal as lateral transfer was not a deprivation of rights).

Apart from being denied reappointment, Plaintiff alleges the following adverse employment actions: 1) placement in the Family Division; 2) being "directed to attend a demeanor class as a result of [a] complaint by a pro se litigant"; and 3) being required to participate in an EEO investigation initiated by the Administrative Office of the Courts in response to Plaintiff's claims of discrimination and retaliation."[8] (Complaint ¶ 41)

Plaintiff alleges that she was rotated to the Family Division because "rotation practices in Essex County were discriminatory affecting only judges of color and women." (Complaint ¶ 23) An assignment that is lateral in nature, such as the one in this case, cannot be considered an adverse employment action. Scott v. State of New Jersey, 143 Fed. Appx. 443, 446 (3d Cir. 2005); see also Williams v. Bristol Myers-Squibb Co., 85 F.3d 270, 274 (7th Cir. 1996) ("a transfer involving no reduction in pay and no more than a minor change in working conditions will not do.")  Indeed, the Appellate Division of the New Jersey Superior Court, in a case which is, in many respects, strikingly similar to the case at bar, held that a reassignment within the state court system is not deemed an adverse employment action. Schott v. State of New Jersey, 2006 WL 1911375 (App. Div. 2006).  In Schott, the Appellate Division affirmed the trial court's holding that the transfer of a Superior Court judge allegedly based on gender, did not constitute an adverse employment action. Referring to Article VI of the New Jersey Constitution, the Court noted that the Chief Justice "may from time to time transfer Judges from one assignment to another, as need appears." Id. at 7 citing N.J. Const. Art VI, Section 7, ¶ 2.  The Appellate Division posited that "rotation is [] the preferred policy and, accordingly, is encouraged." Id. at

---

[8] Plaintiff also alleges that teaching Judges referred to the Family Division as a "Family Disaster." (Complaint at 28).  The subjective feelings of Plaintiff, or others, regarding Plaintiff's placement are irrelevant. Victor v. State of New Jersey, 401 N.J. Super. 596, 616 (App. Div 2008) ("an employer's adverse employment action must rise above something that makes an employee unhappy, resentful or otherwise cause an incidental workplace dissatisfaction.")

5. In concluding that there had been no adverse employment action, the Court held the transfers "were lateral ones and . . . had no impact on tangible benefits or opportunities available to her and thus could not objectively be considered materially adverse." Id. at 9. This Court agrees. The transfer to a different, yet equal department of the court system does not constitute an adverse employment action. The New Jersey state court system is a unified system and each part must be staffed appropriately. Any transfer within the judicial parts is an equal transfer, with equal pay and equal benefits. To permit suit based upon a claimant's perception that assignment to one part of the court is somehow inferior to another assignment, would result in potential causes of action by any state judge that did not like his or her assignment. No unified court system can function in this way. Cf. Schott, 2006 WL 1911375, *9 ("subjective views in light of her personal goals and aspirations can play no part in an [adverse employment] analysis"). The rotation of the Plaintiff to the Family Part is not an adverse employment action.

The second alleged adverse action is that Plaintiff was "directed to attend a demeanor class as a result of [a] complaint by a pro se litigant." (Complaint ¶ 31) Plaintiff alleges that as a result of a complaint on behalf of a pro se litigant, her superiors reprimanded her and informed her that she had a demeanor problem.[9] Initially, it should be noted that Plaintiff does not allege that the complaint of the litigant was inaccurate or improper. Indeed, Plaintiff does not even indicate the nature of the litigant's complaint. Rather, Plaintiff seems to assert that because the complaint was brought by a pro se litigant, it should not have been given serious consideration by Court officials, and implies that she should be treated in accordance with what she contends was

---

[9] Plaintiff asserts that she was presented with three letters by Glenn Grant, the Presiding Judge of the Family Part, which he described as complaints. Plaintiff asserts that based on her review of the letters, only one was actually a complaint. Plaintiff then asserts that "no judge in Essex county has ever been directed to attend any demeanor class as a result of any complaint by a pro se litigant or from counsel. The tradition is to support the judge and to address the matter internally." (Id. at 31)

the tradition of "address[ing] the matter internally." (Id.)  This, of course, is an untenable position.  Every litigant, pro se or represented, has a right to be treated properly by judicial officials.  It necessarily follows that any judge who has been injudicious in dealing with a litigant, represented or pro-se, can be properly counseled as to demeanor issues.  That is all that Plaintiff alleges was done to her.  Moreover, a reprimand or counseling of this sort is not an adverse employment action.  Ferguson v. Deptford Twp., 2008 WL 5401630, 85 (D.N.J. 2008) ("unnecessary reprimands or derogatory comments do not constitute an adverse employment action.")

     Plaintiff's next alleged adverse employment action is that she was retaliated against when the director of the EEO required Plaintiff to participate in an investigation in order to determine whether or not Plaintiff's claims of discrimination and retaliatory conduct could be substantiated.[10]  Simply put, Plaintiff has failed to provide, nor has the Court found, any support for the proposition that the initiation of an EEO investigation is considered an adverse action.  Indeed, it goes without saying, that a governmental or private organization which becomes aware of discrimination claims by an employee is following existing public policy by investigating and attempting to get at the root of such claims.  Certainly, investigating an EEO complaint does not establish a colorable case of retaliation.

---

[10] Specifically, Plaintiff alleges that "[o]n or about April 22, 2005, Costello wrote to Acting Director of the AOC, Philip S. Carchman ("Carchman") 'forwarding Judge Talbert's complaints . . . for formal investigation.' Costello stated '[i]f her allegations are without merit, this should be determined once and for all to preserve public trust and confidence in the courts and to allow her to confront issues that may be related to her own conduct and judicial demeanor." (Complaint ¶ 36) Plaintiff further alleges that "Plaintiff was required to submit to questioning for several hours by an independent investigator.  Subsequently, Carchman reported the judicially instigated investigation had been completed.  Carchman concluded the claim of discrimination, disparate treatment and retaliation was unfounded." (Id. at 37)

3.      **Plaintiff's Causes Of Action Were Not Timely Filed**

Title VII requires a plaintiff to identify any adverse conduct in the EEOC charge and to file the charge "within 300 days of the alleged unlawful employment practice." Balis v. Realtyline, 2009 WL 799277, *3 (D.N.J. 2009). Section 1983 claims, and, consequently, the merged Section 1981 claims, must "be convened within two years of accrual of the cause of action." O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006).

The Title VII claims based on the rotation to the Family Division and the demeanor problem must be dismissed as these alleged adverse employment actions accrued more than 300 days before filing the EEOC charge. The rotation to the Family Division occurred on June 30, 2004, over 500 days before the filing of the EEOC charge on December 14, 2005. Plaintiff argues that, as she could have been rotated at any point while on the bench, the cause of action was continually accruing. The primary basis for the EEOC charge was the rotation to the Family Part on June 30, 2004. This was a discrete event, which Plaintiff "discovered" and complained of in the summer of 2004. Rush v. Scott Speciality Gases, Inc., 113 F.3d 476, 483-84 (3d Cir. 1997) (failure to promote and train are discrete acts for purposes of the statute of limitations). Plaintiff argues that she did not discover her injury until October 2007, when she was advised of her failure to be reappointed. This claim is untenable. Assuming, arguendo, that Plaintiff suffered an adverse employment action (see supra), any injury was when the transfer took place. As discussed supra, the transfer could not have proximately caused her failure to be reappointed. The discovery rule applies when a reasonable person cannot be aware of their injury. Baird v. American Med. Optics, 155 N.J. 54, 66 (1998). Plaintiff also asserts that the training she received concerning demeanor issues was an adverse employment action. The demeanor training

took place in March 2004, well outside of the 300 day statute of limitations. The only alleged adverse employment action which occurred within the 300 day limitations period was the investigation of her discrimination claim by the Administrative Office of the Courts of New Jersey. While this claim is not barred under the statute of limitations, as discussed supra, it, and all claims, will be dismissed for failure to plead an adverse employment action and for lack of proximate causation.

      Plaintiff's Section 1983 claims based on: 1) being placed in the Family Division because of discrimination against her and in retaliation for her protected conduct; 2) being discriminated against by being required "to attend a demeanor class as a result of [a] complaint by a pro se litigant"; and 3) being retaliated against when the director of the EEO required Plaintiff to participate in the investigation of Plaintiff's claims of discrimination and retaliatory conduct must also be dismissed on statute of limitations grounds. Section 1983 claims must be filed within two years of accrual of the cause of action. O'Connor, 440 F.3d at 127 (3d Cir. 2006). The Complaint was filed on June 8, 2009. As discussed, the rotation to the Family Part took place on June 20, 2004, nearly five years before the filing of the Complaint. The demeanor class took place on March 28, 2004, over five years before the filing of the Complaint. Lastly, the EEO investigation took place in May 2005, over four years before the filing of the Complaint. Furthermore, as discussed, each of these alleged adverse employment actions were discrete actions which were discovered over four years ago. The Section 1981 and 1983 claims are dismissed under the applicable statute of limitations.

## CONCLUSION

For the reasons stated above, the motion to dismiss will be granted and the Complaint must be dismissed. An appropriate form of Order will be filed with this Opinion.


May 4, 2010                                             s/ Stanley R. Chesler
                                                        STANLEY R. CHESLER, U.S.D.J.